FILED

OCT 1 0 2012

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| DONALD E. MOELLER, | * | CIV. 04-4200 |
| Plaintiff, | * | MEMORANDUM OPINION AND ORDER RE: RULE 41(a)(1)(A)(ii) STIPULATION |
| -vs- | * | |
| DOUGLAS WEBER, Warden, South Dakota State Penitentiary, DENNIS KAEMINGK, Secretary of the South Dakota Department of Corrections in his official capacity, and DOES 1-20, unknown employees or agents of the South Dakota Department of Corrections, | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On October 2, 2012, counsel for Defendants and Attorney Mark F. Marshall filed a stipulation for dismissal of this 1983 civil rights action pursuant to Fed. R. Evid. 41(a)(1)(A)(ii). Doc. 353. Attorney Mark F. Marshall has represented Moeller in state court and represented Moeller at the time this federal action was commenced. The Court denied a motion from appointed counsel for Moeller from the office of the Arkansas Federal Public Defenders (appointed counsel) seeking an order striking the Notice of Appearance filed by Mark Marshall and directing the clerk not to accept further filings from Mr. Marshall in this matter. Doc. 358. Appointed counsel for Moeller has filed a number of motions to strike or vacate the stipulation for dismissal. Doc. 354, 355, 357. Appointed counsel for Moeller has also filed an emergency motion for appointment of next friend or guardian ad litem in this action. Doc. 361. The Court held a hearing on October 4, 2012, at which Moeller was present, and the Court questioned Moeller regarding his positions and the reasoning behind his positions on his representation and the dismissal of his 1983 civil rights action.

1

After the October 4, 2012 hearing, Moeller wrote this Court and stated, "I am writing you so that my intention is unmistakable. I do not want to be represented by the Arkansas Federal Public Defender. I ask that you terminated (sic) their representation of me immediately." Doc. 369. Appointed counsel for Moeller also submitted additional affidavits in support of their position opposing the stipulation for dismissal and supporting the appointment of a guardian ad litem to act on Moeller's behalf in this action. Appointed counsel has also filed a response to Moeller's recent letter to the Court. The Court has now carefully considered all of the pleadings, supporting documents, testimony and arguments concerning the stipulation for dismissal.

*Stipulation for Dismissal Under Fed. R. Evid. 41(a)(1)(A)(ii)*

A plaintiff's right to dismiss by stipulation pursuant to Fed. R. Evid. 41(a)(1)(A)(ii) is normally both absolute and unconditional. *See* 8 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 41.31 (3d ed. 2012). A voluntary stipulation under Fed. R. Evid. 41(a)(1)(A)(ii), therefore does not ordinarily require court approval. Courts, however, have relied upon their inherent power to look behind a stipulation to dismiss to determine whether there has been improper conduct which gave rise to the stipulation and to make certain that the stipulation of dismissal was voluntary. *See, e.g., United States v. Mercedes-Benz of North America, Inc.*, 547 F.Supp. 399, 400 (D.C. Cal. 1982). Given the gravity of the consequences of a dismissal in this action, the disagreement between appointed counsel and Attorney Mark Marshall on whether the stipulation to dismiss should have been filed, and the allegations challenging Moeller's competency, the Court determined that it had the right and duty to look behind the stipulation and determine whether the stipulation was competent, voluntary and intelligent from Moeller's perspective.

*Voluntary and Intelligent Dismissal of Civil Rights Action on Constitutionality of Lethal Injection Protocol*

The cases which have been called to the Court's attention concerning a competent waiver by a death-row inmate of his federal action have all dealt with habeas corpus petitions filed pursuant to 28 U.S.C. § 2254. While those cases are instructive, the Court is not aware of authority deeming those cases controlling in an action such as the one presented here where Moeller was challenging the method of execution in a 1983 civil rights action. In determining the validity of a waiver of a death-row inmate's action under 28 U.S.C. § 2254, a court must evaluate the inmate's competency because a waiver would bar further federal court review as to the validity of the inmate's conviction.

Moeller, however, has already unsuccessfully appealed from this Court's denial of his habeas corpus petition under 28 U.S.C. § 2254, and Moeller's petition for writ of certiorari has been denied. *See Moeller v. Weber*, 649 F.3d 839 (8th Cir. 2011), *cert. denied*, 132 S.Ct. 2735 (June 4, 2012). Moeller has received full federal review concerning the validity of his conviction.

In *Rees v. Peyton*, 384 U.S. 312, 314 (1966), the Supreme Court held the where a death-row inmate had directed his counsel to withdraw his petition for certiorari to Supreme Court to review a court of appeals decision rejecting his claim, the district court in which the habeas corpus proceeding had been commenced should determine whether the inmate had the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation, or whether the inmate was suffering from a mental disease, disorder or defect which might substantially affect that capacity. *See also Smith v. Armontrout*, 812 F.2d 1050, 1056 (8th Cir.1987). In *Nooner v. Norris*, 402 F.3d 801, 804 (8th Cir. 2005), the Eighth Circuit explained that in reviewing a district court's factual finding that a death-row inmate was competent to withdraw his habeas petition, the "inquiry is two-fold. First, we examine whether the defendant has the rational ability to understand the proceedings. [citations omitted] Second, we consider whether the defendant's waiver was knowing and voluntary, *i.e.*, whether the defendant actually understood the significance and consequences of his waiver and whether the waiver was uncoerced."

The Court finds that Moeller has the capacity to appreciate his position and make a rational choice with respect to continuing his 1983 civil rights action. During the Court's extensive questioning of Moeller, he was at all times articulate and coherent with regard to the nature of his civil rights action and the consequences of abandoning the action. Furthermore, Moeller admitted kidnapping, raping and murdering Rebecca O'Connell, and expressed his belief that he had done an evil thing in raping and killing "that little girl," and that he had to pay for his actions. Moeller explained, "If the rape and murder of Rebecca O'Connell does not deserve the death penalty, then I guess nothing does."

Moeller was also able to explain in general terms how he would be executed by lethal injection and explain in specific terms when the execution was scheduled to take place. Moeller also testified that he was aware of appointed counsel's claims that the implementation of the protocol would not go smoothly and would subject Moeller to more than a little pain.

3

The record contains information that Moeller had suffered from a traumatic childhood which most likely led to depression and anxiety. The record also contains information that Moeller has in the past been diagnosed with a schizotypal personality disorder and a personality disorder with schizotypal traits. However, Moeller is not under the care of a psychologist or psychiatrist, nor is he taking any medication for mental illness. Moeller also testified that his appointed counsel had him evaluated by a psychiatrist in August of 2011 and that Moeller was not found to be insane. This Court finds that even if Moeller suffers from a mental disease, disorder or defect, the mental disease, disorder or defect did not substantially affect his capacity to make a competent decision to dismiss this 1983 civil rights action. Moeller fully comprehends the consequences of the stipulation to dismiss this action and is adamant that the stipulation to dismiss be upheld.

Appointed counsel has submitted materials concerning the solitary and isolated conditions of Moeller's long confinement and made argument that the conditions of Moeller's confinement have rendered his decision to dismiss this action involuntary. Moeller, however, described his routine on death row and demonstrated that in spite of the isolation he has made a sane life in his "house," by cleaning, reading, writing, listening to the radio, and watching television programs and movies. The Court finds that the conditions of Moeller's confinement do not render his decision to dismiss this action involuntary.

The Court finds that Moeller's decision to dismiss this action was uncoerced. Although Attorney Marshall prepared and signed the stipulation of dismissal, this action was taken at Moeller's direction. Both Moeller and Attorney Marshall testified that Marshall does not personally agree with the decision and does not want to see Moeller executed. Moeller also testified that his desire to abandon this lawsuit has existed from before the time counsel from Arkansas was appointed on his case, but that he did not act on the desire at that time because his stepmother was ill and he did not want ro "add any crap on her."

This Court appreciates appointed counsel's position that "[u]nder the American Bar Association's Model Rule of Professional Conduct 1.14 and South Dakota's Ethics Rule 1.14 ('Client with Diminished Capacity'),[appointed counsel] is obligated to take reasonable, protective measures on a client's behalf if counsel reasonably believes the client has 'diminished capacity' and 'is at risk of substantial physical, financial or other harm.'" Doc. 371. However, Rule of Professional Conduct

1.2 provides "a lawyer shall abide by a client's decisions concerning the objectives of representation." Since May of this year Moeller has attempted to fire appointed counsel. Moeller claims, "They are only working for their own agenda. I do not believe they are working for me." At the time the stipulation for dismissal was entered into, Attorney Marshall was the only counsel operating as counsel for Moeller in that he was abiding by Moeller's will in acting to end this litigation.[1] In consideration of Moeller's competent and uncoerced decision to terminate this litigation and the deterioration of the relationship between Moeller and appointed counsel, the Court is terminating the appointment of the Arkansas Federal Public Defender as counsel for Moeller.

In conclusion, the Court finds that Moeller was and is competent to stipulate to dismiss this 1983 civil rights litigation concerning South Dakota's death penalty protocol and that his decision to enter into that stipulation was voluntary and intelligent. Accordingly,

IT IS HEREBY ORDERED:
1. That all motions to strike or vacate the stipulation for dismissal (Doc. 354, 355, 357) are denied;.
2. That the emergency motion for appointment of next friend or guardian ad litem in this action (Doc. 361) is denied;
3. That the appointment of the Arkansas Federal Public Defender as counsel for Moeller is terminated; and
4. That the Stipulation for Dismissal shall operate as contemplated under Fed. R. Evid. 41(a)(1)(A)(ii).

Dated this 9th day of October, 2012.

BY THE COURT:

*Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Deb Peterson*
        DEPUTY

_____

[1] As was observed by the Supreme Court of Kentucky, "Adhering to a defendant's choice to seek the death penalty honors the last vestiges of personal dignity available to such a defendant." *Chapman v. Commonwealth*, 265 S.W.3d 156, 175-176 (Ky.2007).