UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DISTRICT

*************************************************************************

IN THE MATTER OF THE APPLICATION OF THE

AMERICAN CIVIL LIBERTIES UNION TO UNSEAL        CIV. 04-4200

CERTAIN COURT RECORDS

*************************************************************************

## ACLU'S REPLY RE: MOTION FOR REVISION OF ORDER TO UNSEAL

### Introduction

Five days before the redaction deadline set by this Court, Defendants moved for revision of the Court's unsealing order, asserting that many of the documents ordered unsealed must either remain sealed or be released subject to stringent "investigation" and "dissemination" restrictions. To support this request, Defendants argue that the documents are replete with unspecified "clues" that could be used to identify the manufacturer and supplier of the lethal injection drugs used in Donald Moeller's execution. Such conclusory and speculative allegations cannot justify restrictions on the public's right of access to official court documents. Because the deadline for redactions has long passed, the Court should order Defendants to provide the documents to the Clerk of the Court immediately, so that the Court may review and unseal them; if Defendants refuse to comply, the Court should unseal the documents on its own motion.

### Procedural Background

1

1. On April 4, 2009, this Court appointed the Arkansas Federal Public Defender Office to represent Donald E. Moeller in both his habeas appeal and his ongoing cause of action for declaratory and injunctive relief with regard to the lethal injection protocol that would apply to his execution. Doc. 108.

2. The Court subsequently issued protective orders prohibiting Moeller and his counsel at the Public Defender's Office from identifying the members of South Dakota's execution teams, Doc. 188, prohibiting Moeller's counsel from disclosing information regarding the pentobarbital materials to be used in Moeller's execution, Doc. 286, and requiring the parties to submit under seal all pleadings that in any way identify those involved in the manufacture or supply of the pentobarbital, *id.*

3. Out of an abundance of caution provoked by its litigation history with the Attorney General, the Public Defender's Office thereafter filed under seal all documents relating to lethal injection, rather than redacting the name and identifying information of the individuals involved with the execution and supply of the lethal injection drugs. Doc. 408-2.

4. On October 24, 2012, the American Civil Liberties Union of South Dakota ("ACLU") moved the Court to unseal "all information pertaining to the manufacture, creation, purchase and manufacturer's instructions of the pentobarbital and the identity and location of the pharmacy involved in the creation of the pentobarbital that the State of South Dakota intends to use in Moeller's execution." Doc. 408. Alternatively, the ACLU requested that the Court unseal the documents after the information subject to the protective orders had been appropriately redacted. *Id.* Moeller took no position as to the ACLU's motion. Doc. 410.

5. Although Defendants did not categorically oppose the ACLU's motion to unseal, they maintained that the motion could be granted only if: (a) all identifying information subject to the Court's protective orders would be appropriately redacted; (b) the deposition transcripts of Deponents #1 through 4 would remain under seal; and (c) all manufacturer/supplier/seller documentation would also remain under seal. Doc. 413.

6. Defendants also insinuated that the ACLU was acting as a surrogate for the Public Defender's Office. Doc. 413. At the Court's invitation, the Public Defender's Office explained that the ACLU "is not and has never been" its surrogate. Doc. 415.

7. The Court ordered Defendants to redact from the sealed documents all identifying information subject to the protective orders and to provide the redacted documents— including the depositions of Deponents # 1 through 4—to the Clerk of the Court for the Court's final review. *Id.* The Court subsequently clarified that it would unseal the documents on its own motion if Defendants failed respond to its order by January 7, 2013. Doc. 417.

8. On December 17, 2012, Defendants moved for an order requiring the Public Defender's Office to produce an electronic Microsoft Word file "of each of the sealed pleadings ordered to be reviewed and redacted by the court," so that Defendants could run electronic searches for protected information. Doc. 418. In its response, the Public Defender's Office stated that it does not possess Word documents for any of the pleadings, but explained that Defendants could use Adobe's Optical Character Recognition feature to create searchable PDF documents. Doc. 419.

9. On January 2, 2013—five days before the Court's redaction deadline—Defendants moved the Court to revise its order to unseal, arguing that either: a) numerous documents

must remain broadly sealed; or b) the deposition of the pharmacist who supplied the lethal injection drugs must remain totally sealed and conditions limiting the use of unsealed documents must be imposed on any person or entity seeking to access those documents. Doc. 420. The ACLU filed its opposition on January 4, 2013. Doc. 421. Defendants filed their reply on January 7, 2013. Doc. 422.[1]

## Argument

### I. Defendants' conclusory and speculative allegations are insufficient to overcome the public's right of access to the sealed documents.

In their motion for revision, Defendants ask this Court to reverse its own unsealing decision and to declare instead either that the documents at issue cannot be released or that their release must be conditioned on strict investigation and dissemination limitations. Defendants argue that the redactions previously deemed sufficient by the Court will not in fact safeguard the anonymity of the individuals involved in the provision of lethal injection drugs to the State, because the documents contain numerous, unspecified hints and clues—some known only to Defendants, others as yet unknown to anyone—that could be pieced together to reveal the identities of those individuals. These speculative and conclusory assertions are, however, entirely inadequate to overcome the public's First Amendment and common law rights of access to the sealed materials.

Where the public's First Amendment right of access attaches, the party seeking closure or sealing must show that such a restriction of the right is necessitated by a compelling government interest, and the court must provide an explanation—supported by "specific, on the record

---

[1] In their reply, Defendants renewed their request for a court order requiring the Public Defender to provide Defendants with searchable electronic versions of pleadings filed in the case. Doc. 422. Defendants have not, however, responded to the Public Defender's opposition to their request or otherwise explained why they require Word versions of the documents to run electronic searches for protected information.

4

findings"—as to why closure or sealing was necessary and why less restrictive alternatives were not appropriate. *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (internal quotation marks omitted). Similarly, to overcome the public's common law right of access, the party seeking closure or sealing "bears the burden of showing that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)) (internal quotation marks omitted); *see also In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) ("[O]nly the most compelling reasons can justify non-disclosure of judicial records." (quoting *In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005) (internal quotation marks omitted)).

Here, Defendants fail to identify any specific information justifying sealing. Instead, they broadly assert that the documents at issue cannot be released to the public because they "contain potential clues that an astute investigator could use to identify" those involved in the provision of pentobarbital to the State. Doc. 420. Defendants maintain that they "cannot even discuss what these known, potential clues are in [their motion] without giving the ACLU or someone else a tutorial on piecing together the manufacturer/supplier's identity from the unredacted material," and speculate that additional "unknown, potential clues may yet lie in arguments concerning the characteristics of the drug and/or its documentation that are contained in the briefing." *Id.* In other words, Defendants argue that the documents are subject to the "mosaic theory" of intelligence gathering, according to which every bit of information, "much like a piece of jigsaw puzzle, may aid in piecing together other bits of [sensitive] information

5

even when the individual piece is not of obvious importance in itself." *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980); *see also CIA v. Sims*, 471 U.S. 159, 178 (1985).[2]

As an argument for closure or sealing, the "mosaic theory" proves too much. If judicially countenanced, it would swallow entirely the presumption in favor of the public's right of access to court documents and proceedings. "The Government could use its 'mosaic intelligence' argument as a justification to close any public hearing completely and categorically," allowing it to operate in almost total secrecy in all matters remotely concerning sensitive information and "resulting in a wholesale suspension of First Amendment rights." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 709-10 (6th Cir. 2002); *see also Doe v. Gonzales*, 386 F. Supp. 2d 66, 78 (D. Conn. 2005), *appeal dismissed as moot*, 449 F.3d 415 (2d Cir. 2006). A government cloaked in such secrecy "stands in complete opposition to the society envisioned by the Framers of our Constitution." *Detroit Free Press*, 303 F.3d at 710.

More generally, it is well established that the party seeking secrecy cannot satisfy its burden with "broad allegations of harm, bereft of specific examples or articulated reasoning," but must rather show with "specificity" that the portion of the record it seeks to keep from the public may be lawfully withheld from disclosure. *In re Cendant Corp.*, 260 F.3d at 194. Defendants, however, proffer precisely the sort of conclusory and speculative allegations that courts have rejected as insufficient to justify restrictions on the public's right of access. *See Detroit Free Press*, 303 F.3d at 705-06, 709 (holding that "speculation" about the risks posed by allowing public access to deportation proceedings—including the risk that cooperating individuals could be identified and threatened by terrorist organizations—did not justify restriction of the public's

---

[2] To the extent Defendants are concerned about disclosing information to the ACLU through their briefing papers, they may seek to appear before the Court *ex parte* and submit their evidence for *in camera* review. *See, e.g., In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 n.4 (2d Cir. 2009).

6

First Amendment right of access); *cf. Cal. First Amendment Coalition v. Woodford*, 299 F.3d 868, 881-82 (9th Cir. 2002) (striking down a prison regulation barring public viewing of lethal injection procedures, in part because defendants' fear that execution team members would be identified and retaliated against was "pure speculation").

To distract from the obvious deficiencies in their justifications for restricting the public's right of access, Defendants attempt to shift the burden of justification onto those seeking unrestricted disclosure. They argue that "[t]he pharmacist's qualifications are sufficiently described in portions of the briefing that do not require redaction to meet the public's right to an understanding of how Moeller's execution was carried out." Doc. 422. And they assert that "the ACLU's response [to Defendants' motion for revision] does not explain how, or even claim that, its mission on behalf of this nation's condemned inmates will be substantially undermined" by a court order granting Defendants' requests. *Id.*

Such arguments are fundamentally misplaced. Openness of judicial proceedings is itself a cardinal value that may be asserted by any member of the public. *See, e.g., Union Oil of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000); *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1980) (quoting *Press-Enterprise Corp. v. Superior Court*, 464 U.S. 501, 508 (1984) (*Press-Enterprise I*)). Thus, "where a right of access exists, the proponent of closure bears a strong burden in rebutting the presumption of openness," and the party seeking disclosure need not "demonstrate to the court why the documents should be unsealed." *United States v. Antar*, 38 F.3d 1348, 1362 (3d Cir. 1994). Because Defendants have not managed to rebut the presumption

of openness with respect to the documents at issue, their request for restrictions on the public's right of access should be denied.[3]

## II. The investigation and dissemination restrictions proposed by Defendants would violate the First Amendment.

As an alternative to outright sealing, Defendants suggest that most of the documents at issue may be released to the public so long as persons viewing the unsealed documents are subject to stringent investigation and dissemination restrictions. Docs. 420, 422. According to Defendants' proposed restrictions, any member of the public who accesses the Court's documents: "may not copy or disseminate to third parties any copy of the unsealed and redacted forms of the sealed documents without prior approval of the court"; "is expressly prohibited from using the accessed documents by any means for the purpose of identifying protected persons"; and, should he or she deduce the identities of protected persons, "is expressly prohibited from disclosing the deduced identity to any other person or entity, and is expressly prohibited from making contact with any person or entity whose identity . . . has [been] deduced." Doc. 420-1. In other words, Defendants seek to impose significant prior restraints on anyone who seeks to access the documents.[4]

---

[3] In addition to being legally erroneous, Defendants' contentions are also factually inaccurate. As the ACLU stated in its memorandum of points and authorities in support of its motion for public access to the documents at issue, Doc. 408-1, it believes that transparency of government proceedings is especially important when it comes to executions, both because public oversight of the execution process acts as a critical safeguard against carelessness and because an informed public debate about whether the death penalty is in the best interest of the state requires the public to know the full truth about the execution process.

[4] To support their proposed restrictions, Defendants argue that the Public Defender's Office and Defendants "appear to agree that the documents should not be used for purposes of investigating the identities of protected persons." Doc. 420. Regardless of whether or not that assertion is factually accurate, parties to litigation cannot waive the public's rights of access and speech. *See, e.g., Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 222, 225 (6th Cir. 1996); *In re Application & Affidavit for a Search Warrant*, 923 F .2d 324, 331 ( 4th C ir. 1991) ( citing *Richmond Newspapers, Inc. v. Virginia*, 555, 580-81 (1980)).

8

Such restrictions cannot withstand constitutional scrutiny, for two reasons. First, although the First Amendment is not offended by protective orders prohibiting parties to a litigation from disseminating information obtained through the discovery process, *see Seattle Times v. Rhinehart*, 467 U.S. 20, 33-34, 36-37 (1984), judicially imposed prior restraints against the press and public implicate vital First Amendment concerns and are therefore impermissible under all but the most exceptional circumstances. *See, e.g., Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) (holding that the district court's order prohibiting a news organization from disseminating sealed documents in the organization's possession violated the First Amendment). Defendants' conclusory and speculative allegations as to the potential identification of individuals who assisted in Moeller's execution, by contrast, are not sufficient to bring the documents at issue within the "single, extremely narrow class of cases where publication would be so dangerous to fundamental government interests as to justify a prior restraint." *Id.* (internal quotation marks omitted).[5]

Second, the press and other members of the public cannot be punished for disseminating truthful information lawfully obtained from open documents and proceedings. As the Supreme Court explained in *Craig v. Harney*: "What transpires in the court room is public property. . . . Those who see and hear what transpired can report it with impunity." 331 U.S. 367, 374 (1947). Thus, in *Cox Broadcasting Corp. v. Cohn*, the Supreme Court held that a broadcasting corporation could not be sanctioned for publishing the name of a seventeen-year-old rape victim whose identity had been uncovered through inspection of documents made available in open court. 420 U.S. 469, 496-97 (1975). "Once true information is disclosed in public court

---

[5] As Justice Brennan stated in his concurring opinion in *New York Times Co. v. United States*, "only governmental allegation and proof that publication must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea" could support the issuance of a prior restraint. 403 U.S. 713, 726-27 (1971).

documents open to public inspection," the Court stated, "the press cannot be sanctioned for publishing it." *Id.*; *see also, e.g., United States v. Quattrone*, 402 F.3d 304, 312-13 (2d Cir. 2005) (Sotomayor, J.) (holding that a district court's order barring publication of jurors' names not only subjected [press and media organizations] to a prior restraint on speech, but also infringed their freedom to publish information disclosed in open court") (collecting Supreme Court cases). Although courts have speculated that truly exceptional circumstances might "justify a departure from the doctrine barring restrictions on the publication of information revealed in open court," *id.*, Defendants have not alleged any facts sufficient to even suggest such an exception in this case.[6]

## Conclusion

For the foregoing reasons, Defendants' motion for revision of the order to unseal should be denied. Because Defendants have now far exceeded the Court's January 7 redaction deadline, the Court should require Defendants to provide the pertinent documents to the Clerk of the Court forthwith, so that the Court may conduct its final review prior to unsealing. If Defendants refuse to turn over the documents, the Court should unseal them on its own motion, in accordance with its December 5, 2012 Order.

---

[6] South Dakota Code § 23A-27A-31.2 makes confidential the identifying information of any individual who administers a lethal injection and, thanks to a recently passed amendment to the provision, any entity that supplies lethal injection drugs to the State. *See* Senate Bill 36, 88th Session Legislative Assembly (South Dakota 2013). Of course, neither § 23A-27A-31.2 nor Senate Bill 36 removes this Court's duty to adjudicate the public's constitutional right of access to the documents at issue. *See In re Wash. Post Co.*, 807 F.2d 383, 393 (4th Cir. 1989). Moreover, the Court's protective orders already cover this information and Defendants have had sufficient opportunity to redact it from the documents. Whether private individuals may uncover and share the information of their own accord is not presently before this Court.

10

Dated this 13th Day of March, 2013.

Respectfully submitted,

*Robert Doody*

Robert Doody Esq.

ACLU of South Dakota

PO Box 1170

Sioux Falls, SD 57101

## CERTIFICATE OF SERVICE

I hereby certify that on March 13th, 2013 I electronically filed a copy of the foregoing Reply in the United States District Court for the District of South Dakota and that the CM/ECF will automatically file all documents with other counsel.

*Robert Doody*

Robert Doody Esq.

ACLU of South Dakota

PO Box 1170

Sioux Falls, SD 57101

Ph: 605-332-2508

rdoody@aclu.org