# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH DAKOTA
# SOUTHERN DIVISION

| | |
|---|---|
| **DONALD MOELLER,** | |
| *Plaintiff,* | |
| v. | CIV 04-4200 |
| **DOUGLAS WEBER,** Warden, South Dakota State Penitentiary, **DENNIS KAEMINGK,** Secretary of the South Dakota Department of Corrections in his official capacity, and **DOES 1-20,** unknown employees or agents of the South Dakota Department of Corrections, | |
| *Defendants.* | |

## DEFENDANTS' MOTION TO DISMISS AND CLOSE FILE AND SUPPORTING AUTHORITIES

Defendants Douglas Weber, Dennis Kaemingk, and Does 1-20, by and through their counsel, Paul S. Swedlund, Assistant Attorney General for the State of South Dakota, file this motion to dismiss the above-captioned matter and close the file. The plaintiff herein has already dismissed the underlying action and the complaint on which it was based. All that is pending is a motion by an outside entity, the American Civil Liberties Union (ACLU), seeking public disclosure of documents this court correctly saw fit to seal. Because the ACLU has no legal or constitutional right to the public disclosure of the sealed documents, because there is no case or controversy that warrants keeping this file open any longer, and because the court would abuse its discretion unsealing the subject documents, defendants request that the ACLU's motion and the matter as a whole be dismissed and the file closed.

1. On July 19, 2011, this court entered an order stating it would "not require nor allow the production of the identity of people on execution teams." In its July 26, 2012, order regarding drug disclosure, the court found that there were "no practical means of fully redacting or restructuring the materials" relating to the drug and that "concerns regarding the need to protect the identity of the

manufacturer and supplier of the pentobarbital are valid." This court ordered that "[a]ll pleadings that in any way identify the manufacturer and supplier of the pentobarbital" to be "filed under seal." The court expressly withheld the name of the pharmacist.

2. When it ordered anonymous telephonic depositions of Deponents # 1 (pharmacist), # 2 (pusher), and # 3 (poker) on August 1, 2012, this court said that Moeller's counsel could use the depositions "for no purpose other than the representation of Moeller in this action."

3. In spite of these protections, the court may recall that the AFPDO filed a self-executing subpoena for the manufacturer/supplier intending to discover the identity of the pharmacist unless the court intervened [DOCKET 288]. The AFPDO did not serve this self-executing subpoena on defendants. Fortunately, the court intervened [DOCKET 290]. The incident shows, however, the AFPDO's persistent interest in discovering the name of the pharmacist through the manufacturer/supplier, and continuing possibly through the ACLU of South Dakota.

4. The ACLU filed its motion to unseal documents a week prior to Moeller's execution. Moeller was thereafter executed, mooting his case and the necessity for further discovery. Since Moeller himself was not concerned with the drug used in his execution, how can the ACLU claim to have a greater interest in the drug used than Moeller?

5. Because of Moeller's dismissal of his case, the subject documents did not "form the basis for judicial decisions" on the motions to which they were attached. *Aviva Sports, Inc. v. Fingerhut Direct Marketing,* --- F.Supp.2d ---, 2013 WL 4400395 (D.Minn.). In their capacity as motions never ruled on and exhibits thereto, the documents in question played no "role . . . in the exercise of Article III judicial power" such that there would be "resultant value of such information to those monitoring the federal courts." *IDT Corporation v. eBay,* 709 F.3d 1220 (8th Cir. 2013).

6. Where, as here, "the court never adjudicated any aspect of the claims on the merits," the "public's interest in access [is] 'weak'" because the court's consideration of the documents was "only to determine whether to seal them" and beyond that they "had little to do with the district court's exercise of judicial power." *IDT,* 709 F.3d at 1224.

7. Many of the documents the ACLU would have this court unseal are documents produced in discovery pursuant to the court's protective orders, *i.e.* the deposition transcripts, drug information. This discovery was effectively compelled and "derived from materials produced under the protective orders." *IDT,* 709 F.3d at 1224. This is significant for two reasons: (i) discovery materials are not generally considered "judicial documents" subject to common law or First Amendment rights of access; and (ii) discovery that is compelled and subject to a

protective order has a right to the court's continued protection. *IDT,* 709 F.3d at 1223; *Aviva,* 2013 WL 4400395 at *2.

8. Because discovery is broader than admissibility, discovery "does not implicate the same right of access concerns," particularly where material produced in discovery "may seriously implicate privacy interests of litigants and third parties." *Aviva,* 2013 WL 4400395 at *1. This court entered its protective order because it found that concerns for the privacy interests of execution team members were "valid" and sufficient to "necessitate" protection. Given the existence of publicly-disclosed testing of the final, compounded drug actually used for both the Robert and Moeller executions, it is doubtful that the name of any supplier would have had any relevance in court proceedings so as to be admissible. Testing rendered the provenance irrelevant.

9. The ACLU's position is further weakened by the ruling in *Rhines v. Weber,* Civ. 02-924 (7th Jud.Cir.S.D. 2013), upholding the constitutionality of the state's execution protocol and the South Dakota Supreme Court's affirming the decision through a denial of Rhines' motion for a certificate of probable cause. See AMENDED FINDINGS AND CONCLUSIONS RE: METHOD OF EXECUTION CHALLENGE, Exhibit 1; TRIAL BRIEF RE: RHINES' METHOD OF EXECUTION CHALLENGES, Exhibit 2; ORDER DENYING CERTIFICATE OF PROBABLE CAUSE, Exhibit 3. Both *Rhines* courts had the opportunity to hear Rhines' objections, which were identical to Moeller's, and to see the identical testimony of Dr. Heath, Dr. Dershwitz, Sarah Sellers, Deponents # 1, # 2, and # 3, *et al.* (under seal) and determine that the "concerns" about the process voiced by the ACLU herein as justification for unsealing were unfounded [DOCKET 424].

10. The ACLU's argument notwithstanding, this circuit has never recognized a First Amendment right of public access to court documents in civil proceedings. *IDT,* 709 F.3d at 1224, n *. Even under a First Amendment analysis, the ACLU has not established a strong historical tradition of public access to information identifying execution team members, or the value of such information to the judicial process in light of testing and in light of the dismissal of the proceedings prior to adjudication. *IDT,* 709 F.3d at 1224, n*. To the contrary, there is a such a strong historical tradition of shielding information identifying execution team members that it has never been done before.

11. The court has supervisory authority over its own records and the right to deny access where court files "become a vehicle for improper purposes," such as outing execution team members. *SEC v. Orme,* 2007 WL 2033378 (D.S.D.).

12. This court would abuse its discretion by broadly unsealing sealed documents, even in redacted form, in the following ways:
    a. It would publicly disclose information tending to identify execution team members, which has never been done before by a federal court.
    b. It would create a common law or First Amendment right of public access to execution team identities never before recognized by a federal court.

c. It would violate and undermine a state statute (SDCL 23A-27A-31.2), which makes public disclosure of information identifying execution team members a Class 1 misdemeanor punishable by up to one year incarceration.

d. It would violate principles of comity with other courts by undermining orders entered in *Rhines v. Young,* Civ. 00-5020 (D.S.D. 2013), and *Rhines v. Weber,* Civ. 02-924 (7th Jud.Cir.S.D.) and *Rhines v. Weber,* Civ. 26673 (S.D.S.Ct.), which protect Deponents # 1, # 2, and # 3 and the manufacturer/supplier from the disclosures sought in this case. FEDERAL PROTECTIVE ORDER, Exhibit 4; STATE PROTECTIVE ORDER, Exhibit 5.

e. It would revoke assurances given to Deponents # 1, # 2, and # 3 by this court's earlier protective orders that all identifying information would be sealed and used only for the purpose of representing Moeller. The ACLU does not represent Moeller.

f. It would unseal documents on the motion of an entity that is not a real party in interest.

g. It would reward illegitimate discovery performed by the AFPDO *after* they had been dismissed by their client as described in the hearing transcripts and other filings before the court [DOCKET 413].

h. It would impair state law enforcement's future ability to hire execution teams to carry out lawful death sentences in the future.

The court's original instincts were correct. Identifying information is "so embedded in [the] pleading[s] that line-by-line redaction is impossible." *IDT,* 709 F.3d at 1224. The court may recall that the state was initially open to redaction in the interests of transparency [DOCKET 413] but found the task problematic in practice [DOCKET 420]. *IDT,* 709 F.3d at 1224 ("redaction might be insufficient to protect the interests that justify sealing"). The public knows the drug used, the protocol used to administer it, and the testing that showed the drug to be pure, potent, sterile, and safe. Further provenance or process information adds nothing significant to the public's understanding of the performance of executions in this state.

Accordingly, defendants request that this case be dismissed and the file closed without further action to unseal sealed documents. Alternatively, if further unsealing is deemed necessary, that the subject documents would remain broadly sealed except as follows:

> The following portions of Dockets 308 (Part II, Pages 3-6 and Exhibits 1, 2 and 3 thereto), 324 (Parts I and II, Pages 10-56, 62-75), 328 (Parts IV, VII, and XII, Pages 6-9, 11, 14-15 and Exhibits 7, 8 and 13 thereto), 331 (Part 4, Paragraph a on Page 12), 333 (Paragraphs 4, 6, 7, and 8), 334 (Parts IV, VII, and XII, Pages

6-9, 11, 14-15 of Exhibit 1 thereto), 335 (Part V, Pages 9-15), and 349 (Paragraph 6) will remain sealed. Dockets 288, 290, 298, 301, 307, 309, 310, 311, 314, 315, 317, 318, 319, 320, 323, 325, 326, 327, 330, 327, 330, 336, 337, 339, 341, 342, 343, 345, 346, 347, 348, 350, 352, 354, 355, 362, and 363 will be unsealed as redacted by the defendants consistent with the court's protective orders and approved by the court following its review.

Public dissemination would occur through the clerk's office as described in the court's November 7, 2012, order [DOCKET 416]. Public access should be conditioned on agreeing to not use the documents to search for or investigate the identities of protected persons as originally proposed by the AFPDO itself [DOCKET 298 at 14].

Dated this 5th day of September 2013.

Respectfully submitted,

**MARTY J. JACKLEY**
**ATTORNEY GENERAL**
**STATE OF SOUTH DAKOTA**



Paul S. Swedlund
ASSISTANT ATTORNEY GENERAL
paul.swedlund@state.sd.us
1302 East Highway 14, Suite 1
Pierre, SD 57501
(605) 773-3215
(605) 773-4106

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of September 2013 a copy of the foregoing motion to dismiss and close file was served on the ACLU via U.S. Mail.

Paul S. Swedlund